UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE:<br><br>ARLANDO LAMOR HUGHES and<br>ANGELA SHANTE HUGHES,<br><br>Debtors. | Case No. 18-42590-can7 |

JASON AMERINE
DECLARATION PURSUANT TO 28 U.S.C. § 1746

I, Jason Amerine, Esq., state the following:

1. I am over the age of eighteen, of sound mind, capable of making this declaration, and personally acquainted with the facts stated in this declaration.

2. I presently am a licensed attorney in Missouri and Kansas.

3. I have provided legal services to clients regarding bankruptcy for 18 years. My bankruptcy practice primarily involves representing debtors in Chapter 13 or Chapter 7 cases.

4. In my experience, clients who have financial difficulties and are interested in bankruptcy protection typically are experiencing various degrees of collection activities by creditors. The activities can range from formal garnishments to informal phone calls or dunning letters.

**EXHIBIT 1**

5.   A delay with seeking bankruptcy protection will likely subject a client to the on-going collection activities by the client's creditors.

6.   Typically the collection activities of creditors are a source of frustration and anger for the client because of the constant reminder of the client's financial distress. The situation also can negatively impact a client's emotional health, such as contributing to depressive feelings.

7.   My law firm will be unable to directly collect post-petition attorneys' fees, without the use of BK Billing, because the firm is not setup to collect monthly payments directly from clients. The firm does not employ sufficient staff to manage a monthly payment program.

8.   Also, my law firm does not use an automatic payment system, such as an automatic withdrawal from a client's bank account. In my experience, the risk of a default on a monthly payment obligation is significantly greater without an automatic payment system.

9.   The lack of a direct process for collecting monthly payments is one of the reasons that I chose for my firm to enter into a factoring agreement with BK Billing, LLC ("BK Billing").

10.   My firm's ability to factor an account receivable debt with BK Billing is governed by a written agreement between Castle Law and BK Billing.

11.   BK Billing is not compelled to factor an account receivable debt from Castle Law under the terms of the factoring agreement unless the debt meets BK Billing's guidelines.

12.   I do not believe BK Billing will agree to factor an account receivable debt from Castle Law if there is a stay with the collection of the post-petition monthly payments.

13.   Based on my experience of having accounts receivable debts factored with BK Billing, there is a higher probability of a default with the debt obligation if a client's monthly payments are longer than nine (9) months.

14.   Of the post-petition account receivable debt Castle Law has factored with BK Billing, many of those debts were not fully repaid. For example, Huzaifah Tarik Babikir, who is the subject of the pending Adversary Case between the Acting Trustee and Castle Law (No. 18-04172-can), only paid half of the $2,200 account receivable debt that he owed to my firm.

15.   And, my firm is not setup to financially address all of the on-going expenses of the firm, such as office building costs and wages for employees, without use of the post-petition attorneys' fees. If all of the Chapter 7 post-petition attorneys' fees are placed into a trust account, and cannot be used to pay the on-going expenses, then that will be the same as an interest-free loan for those payments.

16. My law firm may have to incur debt to pay on-going expenses if the Chapter 7 post-petition fees were unavailable, which debt will most certainly include interest charges.

17. Due to the on-going objections by the Acting U.S. Trustee and his lawyers to the attorneys' fee applications filed in Chapter 7 cases that involved bifurcated services and post-petition contracts, I have decided to temporarily suspend use of the bifurcated model because the threat of not being able to use any part of the post-petition fees places too much risk on my firm and its ability to pay for expenses.

18. In January of 2019, Joseph Banks met with me to discuss possibly filing for bankruptcy protection due to his finical situation.

19. I discussed the options for paying for my firm's legal services. One of the options that was discussed was paying for all of the attorneys' fees before a Chapter 7 case is filed. Another option that was discussed was the use of the bifurcated model.

20. Under the up-front option, the attorneys' fees would have been $1,810, inclusive of all expenses.

21. With the bifurcated model, the pre-filing payment for Mr. Banks would have been $770, which would have covered the Chapter 7 filing fee of $335, $70 for mandatory classes and credit report, and $365.00 for pre-petition legal services of reviewing Mr. Bank's financial information and preparing a skeletal Chapter 7 petition.

Mr. Banks could then enter into a second agreement with my firm for post-petition legal services, which services would have cost $1400.00 .

22. Mr. Banks returned to my firm in March and asked to use the bifurcated model.

23. In the interim, however, I decided to temporarily suspend use of the bifurcated model due to the Acting Trustee's opposition to my firm's motion for attorneys' fees in the In re Hughes case, as well as other pending cases. That opposition created too great of a risk of not having any part of the post-petition attorneys' fees available for use for my firm's on-going expenses with operating a business.

24. For this reason, I told Mr. Banks the bifurcated services model was no longer an option that my firm could provide to him.

25. Mr. Banks had a tax debt that allowed my firm to file a Chapter 13 case for him. For this reason, a Chapter 13 case was filed. My firm's attorneys' fees will be paid through the Chapter 13 case.

26. I explained to Mr. Banks why I was not willing to have my firm offer him the bifurcated service model. Mr. Banks expressed anger and frustration that the bifurcated service model was not an option due to the Acting Trustee's opposition toward the model, and me and my law firm. Mr. Banks was interested in having a shorter bankruptcy case by filing for Chapter 7 relief, and then paying his tax debt outside of the bankruptcy.

27. Attached to this Declaration is a true and correct copy of a letter from Mr. Banks to the Acting Trustee, Daniel Casamatta. The letter was typed by my law firm and sent to the Acting Trustee by my firm's legal counsel, Mr. Koehler. But, Mr. Banks willingly agreed to sign the letter to tell the Acting Trustee about his disappointment and frustration.

28. I expect more potential clients will be in a situation similar to Mr. Banks after May of 2019. During the first part of the year bankruptcy clients will often have a tax refund available to pay for my firm's attorneys' fees before the Chapter 7 is case. But, toward the end of May, and throughout the remainder of the year, the frequency of potential clients who do not have available funds to pay attorneys' fees before a Chapter 7 case increases because the tax refund was used for the person's other financial needs.

**I declare under penalty of perjury that the foregoing is true and correct. Executed on April 16, 2019, in Kansas City, Missouri, United States of America.**

_____
Jason Amerine