14:02:

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| in re: ) | |
| ) | |
| ROSA NICHOLE RENEE JAMES, ) | Case No. 17-41965-BTF7 |
| ) | |
| Debtor. ) | |
| ) | |
| DANIEL J. CASAMATTA, ACTING UNITED STATES TRUSTEE, ) | 30(b)(6) Deposition of BK Billing through: |
| ) | David Stidham |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| CASTLE LAW OFFICE OF KANSAS CITY, PC, a Missouri Professional Corporation, ) | Adv. Case No. 18-4168-CAN |
| ) | |
| Defendant. ) | |
| ) | |
| and ) | |
| ) | |
| JASON C. AMERINE, ) | |
| ) | |
| Defendant. ) | |

December 13 and 14, 2018
Location: Christensen & Jensen
257 East 200 South, Suite 1100
Salt Lake City, Utah 84101
Reporter: Diana Kent, RPR, CRR and
Dawn Perry, CSR
Notary Public in and for the State of Utah

**EXHIBIT 2**

Case 18-42590-can7   Doc 48-3   Filed 04/16/19   Entered 04/16/19 21:37:58   Desc
Exhibit 2 BK Billing 30(b)(6) Deposition transcript   Page 2 of 17

David Stidham * December 13, 2018                                    30(b)(6)
                                                                          2

```
 1                    A P P E A R A N C E S

 2   FOR THE PLAINTIFF:

 3           Adam E. Miller
             OFFICE OF THE UNITED STATES TRUSTEE
 4           Attorney at Law
             Charles Evans Whittaker Courthouse
 5           400 East 9th Street, Room 3440
             Kansas City, Missouri  64106
 6           Tel: (816) 512-1940
             Fax: (816) 512-1967
 7           adam.e.miller@usdoj.gov

 8           Laurie A. Cayton
             UNITED STATES DEPARTMENT OF JUSTICE
 9           Attorney at Law
             405 South Main Street, Suite 300
10           Salt Lake City, Utah  84111
             Tel: (801) 524-3031
11           Fax: (801) 524-5628
             laurie.cayton@usdoj.gov

12

13   FOR THE DEFENDANT:

14           Matthew Koehler
             BROWN & JAMES
15           Attorney at Law
             800 Market Street, Suite 1100
16           St. Louis, MO 63101
             Tel: (314) 242-5267
17           Fax: (314) 242-5467
             mkoehler@bjpc.com

18

19   FOR THE DEPONENT:

20           Aaron B. Millar
             MILLAR WALKER
21           Attorney at Law
             5200 South Highland Drive, #300
22           Holladay, Utah  84117
             Tel: (801) 424-5280
23           Fax: (801) 424-5281
             aaron@millarwalker.com

24

25   (Continued on following page)
```



CitiCourt
THE REPORTING GROUP

```
 1                    A P P E A R A N C E S

 2    ALSO PRESENT:

 3             Robert B. Cummings
               THE SALT LAKE LAWYERS
 4             Attorney at Law
               10 Exchange Place, #622
 5             Salt Lake City, Utah   84111
               Tel: (801) 590-7555
 6             Fax: (801) 590-7519
               robert@thesaltlakelawyers.com
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

I N D E X

| | DAVID STIDHAM | PAGE |
|---|---|---|
| | Examination By Mr. Miller | 5 |
| | Examination By Mr. Koehler | 160 |
| | Further Examination By Mr. Miller | 186 |

E X H I B I T S

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| A | Invoice and Account Information on Huzaifah Babikir | 160 |



Case 18-42590-can7 Doc 48-3 Filed 04/16/19 Entered 04/16/19 21:37:58 Desc
Exhibit 2 BK Billing 30(b)(6) Deposition transcript Page 5 of 17

David Stidham * December 13, 2018    30(b)(6)
                                          5

```
                          P R O C E E D I N G S


                          David M. Stidham,
          called as a witness, being first duly sworn,
               was examined and testified as follows:


                              EXAMINATION
14:20:08   BY MR. MILLER:
14:20:08        Q.    This is a Rule 30(b)(6) deposition of BK
14:20:37   Billing, LLC which is a Utah entity in connection with
14:20:41   four related adversary proceedings in the United States
14:20:45   Bankruptcy Court for the Western District of Missouri
14:20:47   which have been, for pretrial purposes, consolidated in
14:20:51   regards to the case of In Re Rosa Nichole Renee James.
14:20:57   And the adversary style is Daniel Casamatta versus
14:21:03   Castle Law Office of Kansas City, PC and Jason C.
14:21:08   Amerine under case number 18-4168.
14:21:13             Would you state your name, sir.
14:21:14        A.    Yes.  David Michael Stidham.
14:21:16        Q.    And you have been designated by BK Billing
14:21:20   as the witness to appear here today; is that correct?
14:21:22        A.    Yes.
14:21:23        Q.    And I know that you have been previously
14:21:25   examined in a deposition before by Ms. Cayton but I'm
14:21:29   going to go over some rules just so we are all clear.
```



Case 18-42590-can7   Doc 48-3   Filed 04/16/19   Entered 04/16/19 21:37:58   Desc
Exhibit 2 BK Billing 30(b)(6) Deposition transcript   Page 6 of 17

David Stidham * December 13, 2018

30(b)(6)
19

| | | |
|---|---|---|
| 14:41:25 | 1 | would have checked the Bar, as well, in Missouri. |
| 14:41:28 | 2 | Q. Who typically would conduct that review |
| 14:41:30 | 3 | within BK Billing? |
| 14:41:34 | 4 | A. Now we have two or three people that would |
| 14:41:38 | 5 | perform that review. In the case of Amerine and Castle |
| 14:41:43 | 6 | Law, I'm not sure who performed that. |
| 14:41:45 | 7 | Q. Okay. And in July of 2017, did BK Billing |
| 14:41:53 | 8 | have underwriting guidelines with respect to factoring |
| 14:41:57 | 9 | particular bankruptcy cases? |
| 14:42:00 | 10 | A. Could you define "particular"? |
| 14:42:02 | 11 | Q. Well, in June or July of 2017, did you |
| 14:42:08 | 12 | review each bankruptcy case that an attorney proposed |
| 14:42:13 | 13 | to factor with you to determine if it met any sort of |
| 14:42:16 | 14 | internal guidelines? |
| 14:42:17 | 15 | A. Yes. |
| 14:42:18 | 16 | Q. What were those guidelines? |
| 14:42:21 | 17 | A. First, it needed to be a post-petition |
| 14:42:26 | 18 | contract, so we verified that a case had been filed in |
| 14:42:33 | 19 | Pacer; we verified, via Pacer, that a case had been |
| 14:42:37 | 20 | filed. And then the second step would be to verify the |
| 14:42:48 | 21 | amount of the contract, that a contract was signed and |
| 14:42:56 | 22 | executed properly, that there was an attaining payment |
| 14:43:03 | 23 | schedule with the client, between the attorney and the |
| 14:43:07 | 24 | client. And that would be about it, I would imagine. |
| 14:43:17 | 25 | Q. Okay. In July of 2017, did BK Billing |



Case 18-42590-can7   Doc 48-3   Filed 04/16/19   Entered 04/16/19 21:37:58   Desc
Exhibit 2 BK Billing 30(b)(6) Deposition transcript   Page 7 of 17

David Stidham   *   December 13, 2018

30(b)(6)
20

| | | |
|---|---|---|
| 14:43:24 | 1 | review each agreement to determine if a debtor could |
| 14:43:30 | 2 | afford to make the payments that were proposed? |
| 14:43:41 | 3 | A. What do you mean by "afford"? |
| 14:43:43 | 4 | Q. Let me ask it this way: Did BK Billing |
| 14:43:46 | 5 | have any guidelines for accepting factoring with regard |
| 14:43:49 | 6 | to the amount of money a debtor made? |
| 14:43:51 | 7 | A. Yes. |
| 14:43:52 | 8 | Q. Okay. What were those guidelines in July |
| 14:43:56 | 9 | of 2017? |
| 14:43:59 | 10 | A. Those guidelines have changed as |
| 14:44:03 | 11 | information has come in. In July of 2017, I would |
| 14:44:13 | 12 | imagine it would be a percentage -- that the payment to |
| 14:44:21 | 13 | the attorney could not exceed a certain percentage of |
| 14:44:30 | 14 | the gross total income of the client. So we would |
| 14:44:36 | 15 | verify client gross income, and then there was a |
| 14:44:46 | 16 | calculation that said that a certain percentage of the |
| 14:44:51 | 17 | gross client income could go to an attorney monthly |
| 14:44:57 | 18 | payment, and that if the payment schedule fit within |
| 14:44:59 | 19 | that parameter we would agree to accept it for |
| 14:45:03 | 20 | factoring. |
| 14:45:07 | 21 | Q. Do you know what that percentage was? |
| 14:45:08 | 22 | A. No. |
| 14:45:09 | 23 | Q. Does BK Billing have records that would |
| 14:45:12 | 24 | indicate what that percentage was in July of 2017? |
| 14:45:15 | 25 | A. Yes. |



Case 18-42590-can7 Doc 48-3 Filed 04/16/19 Entered 04/16/19 21:37:58 Desc
Exhibit 2 BK Billing 30(b)(6) Deposition transcript Page 8 of 17

David Stidham * December 13, 2018

30(b)(6)

25

| | | |
|---|---|---|
| 14:50:53 | 1 | agreement for a minute. |
| 14:50:54 | 2 | A. Okay. |
| 14:50:59 | 3 | Q. At the very bottom, paragraph 1 of the -- |
| 14:51:03 | 4 | numeral paragraph 1 of the agreement governs the |
| 14:51:06 | 5 | purchase price for the purchase of the agreement, or |
| 14:51:12 | 6 | the contract; is that correct? |
| 14:51:13 | 7 | A. Yes. |
| 14:51:13 | 8 | Q. And it indicates that Castle Law would |
| 14:51:17 | 9 | sell accounts to BK Billing in exchange for 70 percent |
| 14:51:20 | 10 | of the face value of that agreement; is that correct? |
| 14:51:23 | 11 | A. Yes. |
| 14:51:24 | 12 | Q. It also says that Castle Law would be paid |
| 14:51:29 | 13 | within two to three days after providing BK Billing |
| 14:51:32 | 14 | with all the documents regarding an individual account; |
| 14:51:35 | 15 | is that correct? |
| 14:51:36 | 16 | A. Yes. |
| 14:51:40 | 17 | Well, hold on. I said yes too soon. |
| 14:51:42 | 18 | Q. Okay. |
| 14:51:43 | 19 | A. It says, "BK Billing will pay the Purchase |
| 14:51:47 | 20 | Price to the Firm within two to three business days |
| 14:51:50 | 21 | after BK Billing's approval of the Firm's Transferred |
| 14:51:53 | 22 | Accounts uploaded to the BK Billing online portal." So |
| 14:51:56 | 23 | documents could be uploaded into the portal, but unless |
| 14:52:00 | 24 | they got through underwriting there would not be a |
| 14:52:02 | 25 | transfer of funds until that occurred. |

Case 18-42590-can7   Doc 48-3   Filed 04/16/19   Entered 04/16/19 21:37:58   Desc
Exhibit 2 BK Billing 30(b)(6) Deposition transcript   Page 9 of 17

David Stidham * December 13, 2018

30(b)(6)
26

| | | |
|---|---|---|
| 14:52:04 | 1 | Q. So BK Billing does do underwriting with |
| 14:52:07 | 2 | respect to every contract? |
| 14:52:08 | 3 | A. Yes. |
| 14:52:08 | 4 | Q. Okay. And that was the criteria that we |
| 14:52:11 | 5 | were talking about earlier; is that correct? |
| 14:52:13 | 6 | A. Yes. |
| 14:52:13 | 7 | Q. Who does the actual underwriting review at |
| 14:52:18 | 8 | BK Billing? |
| 14:52:19 | 9 | A. For each individual contract? |
| 14:52:20 | 10 | Q. Yes. Do you have staff that do that? |
| 14:52:22 | 11 | A. Yes. |
| 14:52:23 | 12 | Q. Are those lawyers? |
| 14:52:24 | 13 | A. No. |
| 14:52:24 | 14 | Q. Okay. Do you reject contracts routinely? |
| 14:52:31 | 15 | A. No. Not routinely, no. |
| 14:52:37 | 16 | Q. Okay. Does BK Billing ever reject any |
| 14:52:40 | 17 | contracts that are submitted for factoring? |
| 14:52:42 | 18 | A. Yes. |
| 14:52:43 | 19 | Q. Has BK Billing rejected any contract |
| 14:52:46 | 20 | submitted by Castle Law Office? |
| 14:52:53 | 21 | A. I'm not sure. I would imagine the answer |
| 14:52:56 | 22 | is yes. |
| 14:52:57 | 23 | Q. Does BK Billing keep any records with |
| 14:53:00 | 24 | respect to contracts that's rejected for factoring? |
| 14:53:03 | 25 | A. Yes. |



| | | |
|---|---|---|
| 16:11:12 | 1 | A. Adelaide Maudsley at Kirton McConkie in |
| 16:11:17 | 2 | Salt Lake City. |
| 16:11:17 | 3 | Q. Do you know if she reviewed them for |
| 16:11:24 | 4 | compliance with any law other than Utah? |
| 16:11:32 | 5 | A. Yes. |
| 16:11:37 | 6 | Q. Did she review it for compliance with any |
| 16:11:40 | 7 | laws other than Utah? |
| 16:11:43 | 8 | A. Yes. Bankruptcy code is federal, and so |
| 16:11:48 | 9 | we assume -- we did not assume. We researched and |
| 16:11:55 | 10 | created a contract that, to us, obviously complied with |
| 16:12:03 | 11 | federal bankruptcy code. |
| 16:12:05 | 12 | Q. Could you say her name one more time? |
| 16:12:20 | 13 | Adelaide -- what was the last name? |
| 16:12:22 | 14 | A. Maudsley, M-A-U-D-S-L-E-Y. |
| 16:12:26 | 15 | Q. Did she ever provide BK Billing an opinion |
| 16:12:29 | 16 | letter about the viability of either of these |
| 16:12:33 | 17 | documents? |
| 16:12:41 | 18 | A. No. |
| 16:12:41 | 19 | Q. Would you look at the document that is |
| 16:12:49 | 20 | Bates stamped 1960. |
| 16:12:53 | 21 | A. Yes. |
| 16:12:55 | 22 | Q. I believe we previously reviewed a |
| 16:12:59 | 23 | provision of the agreements that required the law firm, |
| 16:13:03 | 24 | in this case Castle Law, to obtain a signed payment |
| 16:13:08 | 25 | authorization form; is that correct? |



Case 18-42590-can7   Doc 48-3   Filed 04/16/19   Entered 04/16/19 21:37:58   Desc
Exhibit 2 BK Billing 30(b)(6) Deposition transcript   Page 11 of 17

David Stidham   *   December 13, 2018

30(b)(6)

70

| | | | |
|---|---|---|---|
| 16:13:09 | 1 | A. | Yes. |
| 16:13:09 | 2 | Q. | Would this be an example of one such |
| 16:13:12 | 3 | payment authorization form? | |
| 16:13:14 | 4 | A. | Yes. |
| 16:13:14 | 5 | Q. | Do you know who prepared this document? |
| 16:13:24 | 6 | A. | Yes. |
| 16:13:27 | 7 | Q. | Who, to the best of your knowledge? |
| 16:13:30 | 8 | A. | It was a collaboration. |
| 16:13:32 | 9 | Q. | This document was actually required to be |
| 16:13:35 | 10 | used by partner attorneys; is that correct? | |
| 16:13:37 | 11 | A. | No. |
| 16:13:38 | 12 | Q. | Well, the contract provided that whatever |
| 16:13:45 | 13 | recurring payment authorization form was used had to be | |
| 16:13:48 | 14 | in a format acceptable to BK Billing; is that correct? | |
| 16:13:51 | 15 | A. | Yes. |
| 16:13:51 | 16 | Q. | Are you aware of any attorneys who used a |
| 16:13:54 | 17 | form other than this form? | |
| 16:13:55 | 18 | A. | Yes. |
| 16:13:56 | 19 | Q. | Was there a reason why a form other than |
| 16:14:01 | 20 | this form was used by other attorneys? | |
| 16:14:05 | 21 | | MR. MILLAR: Objection. Calls for |
| | 22 | speculation. | |
| 16:14:06 | 23 | | If you know the answer. |
| 16:14:07 | 24 | A. | Yes. |
| 16:14:11 | 25 | Q. | What was that reason, if you know? |



Case 18-42590-can7   Doc 48-3   Filed 04/16/19   Entered 04/16/19 21:37:58   Desc
Exhibit 2 BK Billing 30(b)(6) Deposition transcript   Page 12 of 17

30(b)(6)
David Stidham * December 13, 2018
149

```
09:29:47   1   contract length/holdback account processing fee header.
09:29:51   2             Do you see that?
09:29:52   3        A.   Yes.
09:29:52   4        Q.   It says -- the first sentence there says,
09:29:55   5   "Contracts can now be between 6 and 18 months."
09:29:59   6             Is that correct?
09:29:59   7        A.   Yes.
09:30:00   8        Q.   What was that changed from?
09:30:04   9        A.   Twelve months.
09:30:05  10        Q.   So BK Billing now will factor contracts
09:30:09  11   over 18 months instead of 12 months?
09:30:14  12        A.   No.  According to this document, yes,
09:30:18  13   which was titled May 15th, 2018.  That is no longer the
09:30:23  14   case, no.
09:30:24  15        Q.   Have there been further underwriting
09:30:27  16   revisions?
09:30:28  17        A.   Yes.
09:30:28  18        Q.   When did those go into effect?
09:30:32  19        A.   They will go into effect for 2019.  There
09:30:39  20   also have been some from October of 2018.  We change --
09:30:42  21   I believe October 2018.  We change underwriting
09:30:46  22   procedures with frequency based on the data that we are
          23   receiving.
09:30:52  24        Q.   Okay.  Why did BK Billing decide to go
09:30:56  25   back to 12-month contracts?
```



Case 18-42590-can7 Doc 48-3 Filed 04/16/19 Entered 04/16/19 21:37:58 Desc
Exhibit 2 BK Billing 30(b)(6) Deposition transcript Page 13 of 17

30(b)(6)
David Stidham * December 13, 2018
150

| | | |
|---|---|---|
| 09:31:00 | 1 | A. Risk of default and delinquency. |
| 09:31:02 | 2 | Q. So there was a determination made that on |
| 09:31:04 | 3 | a contract of longer than 12 months there was an |
| 09:31:07 | 4 | increased risk of delinquency? |
| 09:31:10 | 5 | A. Without getting into our proprietary |
| 09:31:13 | 6 | analysis of the data, yes, there was an increased |
| 09:31:17 | 7 | default risk with contract terms over 12 months. |
| 09:31:20 | 8 | Q. When did the change go into effect to |
| 09:31:22 | 9 | change it back to a 12-months maximum? |
| 09:31:26 | 10 | A. It will be 2019. |
| 09:31:27 | 11 | Q. So as of today, you would accept a |
| 09:31:30 | 12 | contract of 18 months? |
| 09:31:36 | 13 | A. Yes. Yes. |
| 09:31:40 | 14 | MR. MILLAR: Can you read that back |
| 09:31:43 | 15 | just -- for some reason I was distracted by this, so |
| 09:31:46 | 16 | can you read that back, please? |
| 09:32:06 | 17 | (Record was read as follows: "When did |
| 09:31:20 | 18 | the change go into effect to change it back to a |
| 09:31:24 | 19 | 12-months maximum?" |
| 09:31:26 | 20 | "Answer. It will be 2019. |
| 09:31:27 | 21 | "Question. So as of today, you would |
| 09:31:29 | 22 | accept a contract of 18 months? |
| 09:31:36 | 23 | "Answer. Yes.") |
| 09:32:21 | 24 | Q. (By Mr. Miller) There is a statement in |
| 09:32:23 | 25 | this -- there is a chart. Do you see the chart on this |



Case 18-42590-can7   Doc 48-3   Filed 04/16/19   Entered 04/16/19 21:37:58   Desc
Exhibit 2 BK Billing 30(b)(6) Deposition transcript   Page 14 of 17

30(b)(6)
David Stidham * December 13, 2018
179

| | | |
|---|---|---|
| 10:16:22 | 1 | way we know how to get a post-petition bankruptcy |
| 10:16:26 | 2 | receivable is through the process of bifurcation. |
| 10:16:30 | 3 | Q. (By Mr. Koehler) And it's not by |
| 10:16:32 | 4 | accident -- oops, I forgot to do half my services |
| 10:16:37 | 5 | before the bankruptcy is filed; I guess I'll go ahead |
| 10:16:40 | 6 | and bifurcate this agreement -- it's a planned process. |
| 10:16:43 | 7 | Would that be a fair statement? |
| 10:16:45 | 8 | A. Yes. |
| 10:16:46 | 9 | Q. All right. You've answered questions over |
| 10:17:06 | 10 | the last several hours between yesterday and today |
| 10:17:09 | 11 | about the underwriting process and evaluating, for |
| 10:17:13 | 12 | example, some information with regards to the law |
| 10:17:17 | 13 | firm's client. So there might be bank statements or |
| 10:17:21 | 14 | paycheck records or something like that. |
| 10:17:24 | 15 | Do you recall those questions and your |
| 10:17:26 | 16 | answers about those documents? |
| 10:17:28 | 17 | A. Yes. |
| 10:17:28 | 18 | Q. All right. On the topic of the law firm's |
| 10:17:36 | 19 | clients and, for example, the sophistication of a |
| 10:17:40 | 20 | client, would you expect that a client that is needing |
| 10:17:45 | 21 | bankruptcy services -- potential bankruptcy services, |
| 10:17:49 | 22 | and knowing enough to search out a law firm, has at |
| 10:17:52 | 23 | least some level of sophistication to be able to make |
| 10:17:56 | 24 | these types of decisions about their personal finances? |
| 10:18:01 | 25 | A. Yes. |



CITICOURT
THE REPORTING GROUP

| | | |
|---|---|---|
| 10:18:01 | 1 | Q. All right. If you were wanting to try to |
| 10:18:08 | 2 | get a viewpoint, an opinion, if you will, because -- |
| 10:18:12 | 3 | strike that. Let me back up. |
| 10:18:13 | 4 | Would it be fair for me to say that in |
| 10:18:16 | 5 | your business model BK Billing does not, for example, |
| 10:18:21 | 6 | call up a law firm's client and have a ten-minute |
| 10:18:25 | 7 | interview where they are asking questions and having |
| 10:18:27 | 8 | the client answer questions as far as trying to gauge |
| 10:18:32 | 9 | that client's specific sophistication? Would that be |
| 10:18:36 | 10 | fair? |
| 10:18:37 | 11 | A. Yeah, that does not happen. |
| 10:18:42 | 12 | Q. Would you -- as the CEO of BK Billing, |
| 10:18:47 | 13 | would you want to obtain the viewpoint or opinion about |
| 10:18:51 | 14 | sophistication of a client from a law firm that |
| 10:18:53 | 15 | regularly deals with consumers, or would you want to |
| 10:18:57 | 16 | try to get or rely upon the opinion, for example, of a |
| 10:19:01 | 17 | government lawyer who has been a 30-year bureaucrat? I |
| 10:19:05 | 18 | mean, whose opinion would you trust more? |
| 10:19:08 | 19 | A. We, as a rule, default to the service |
| 10:19:15 | 20 | provider and the service provider's opinion. |
| 10:19:18 | 21 | Q. Do you value that they have daily |
| 10:19:20 | 22 | interaction with these types of consumer clients versus |
| 10:19:24 | 23 | a government lawyer? |
| 10:19:25 | 24 | A. We would expect it. |
| 10:19:29 | 25 | Q. Would you also expect that -- based upon |



| | | |
|---|---|---|
| 10:19:34 | 1 | my prior questions a few minutes ago of wanting to deal |
| 10:19:37 | 2 | with ethical lawyers, that you would be wanting to have |
| 10:19:40 | 3 | relationships with lawyers and law firms that are |
| 10:19:42 | 4 | interested in looking after the best interests of their |
| 10:19:45 | 5 | clients? |
| 10:19:46 | 6 | A.   That is one of the key criteria. |
| 10:19:49 | 7 | Q.   And that would include topics such as |
| 10:19:54 | 8 | conflicts of interest or anything.  Would that be fair? |
| 10:19:57 | 9 | A.   Yes. |
| 10:19:57 | 10 | Q.   All right.  And based upon your |
| 10:20:00 | 11 | experience, would you trust the clients that you are |
| 10:20:03 | 12 | working with to be able to provide that type of |
| 10:20:05 | 13 | analysis, or would you expect that a government lawyer, |
| 10:20:08 | 14 | who has been with the government for 30 years, for |
| 10:20:11 | 15 | example, would be in the best position to make that |
| 10:20:14 | 16 | analysis? |
| 10:20:14 | 17 | MR. MILLER:   Objection.  Calls for |
| 10:20:15 | 18 | speculation. |
| 10:20:16 | 19 | You can answer. |
| 10:20:19 | 20 | THE WITNESS:   It is my experience that |
| 10:20:22 | 21 | there are varying degrees of sophistication amongst |
| 10:20:30 | 22 | service providers that we deal with or that we work |
| 10:20:34 | 23 | with. |
| 10:20:36 | 24 | However, generally speaking, the consumer |
| 10:20:44 | 25 | attorneys that we work with have their boots on the |



Case 18-42590-can7   Doc 48-3   Filed 04/16/19   Entered 04/16/19 21:37:58   Desc
Exhibit 2 BK Billing 30(b)(6) Deposition transcript   Page 17 of 17

David Stidham   *   December 13, 2018

30(b)(6)

182

| | | |
|---|---|---|
| 10:20:47 | 1 | ground, so to speak, and understand the actual needs of |
| 10:20:55 | 2 | the people that are coming to them for service, and |
| 10:20:59 | 3 | their viewpoint as to how to best meet their clients' |
| 10:21:04 | 4 | needs and their consumers' needs would hold weight, in |
| 10:21:10 | 5 | my mind, as opposed to a bureaucratic opinion, yes. |
| 10:21:15 | 6 | Q.   (By Mr. Koehler) Okay.  I asked you, |
| 10:21:16 | 7 | before you came in here today, to read -- there is a |
| 10:21:19 | 8 | plaque in the lobby of this U.S. Trustee's office.  Did |
| 10:21:22 | 9 | you read that? |
| 10:21:23 | 10 | A.   Yes. |
| 10:21:24 | 11 | Q.   And would you agree with me that it |
| 10:21:25 | 12 | generally said that the U.S. Trustee's office -- that |
| 10:21:29 | 13 | their goals are to preserve the integrity and |
| 10:21:33 | 14 | efficiency of the bankruptcy process, the bankruptcy |
| 10:21:36 | 15 | system? |
| 10:21:36 | 16 | MR. MILLER:  Objection.  It exceeds the |
| 10:21:38 | 17 | scope of my direct examination of the debtor, and it's |
| 10:21:42 | 18 | irrelevant, but he can answer. |
| 10:21:43 | 19 | THE WITNESS:  Yes. |
| 10:21:45 | 20 | Q.   (By Mr. Koehler) Okay.  And would you |
| 10:21:47 | 21 | agree with me that if you were trying to achieve |
| 10:21:50 | 22 | efficiency, that it would be more efficient to have a |
| 10:21:53 | 23 | conversation with someone than to file, in your words, |
| 10:21:57 | 24 | a spurious lawsuit? |
| 10:21:57 | 25 | MR. MILLER:  Objection.  Same objection I |

